**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **AUDRA N. GALLAGHER** | : | Case No. 1:22-CV-751 |
| 3620 W. Delap Road | : | |
| Ellettsville, IN 47429 | : | Judge _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ORGANIZED LIVING, INC.** | : | **PLAINTIFF'S COMPLAINT** |
| C/O Doug Leggins | : | **WITH JURY DEMAND** |
| 1500 Strong Drive | : | **ENDORSED HEREON**_____ |
| Bloomington, IN 47403 | : | |
| | : | |
| Defendant. | : | |

## PARTIES

1.      Plaintiff Audra Gallagher is an individual citizen of the State of Indiana.

2.      Defendant Organized Living is an Ohio corporation, incorporated in Delaware, and operating in Bloomington, Indiana.   Defendant is an employer within the meaning of federal law.

## JURISDICTION AND VENUE

**3.**      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States.  Plaintiff's gender discrimination and retaliation claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §2000e *et seq*.

4.      Venue is proper in this Division and District pursuant to 28 U.S.C. §1391 because Plaintiff was employed at the physical premises maintained by Defendant in this Division and District and a substantial amount of the conduct giving rise to Plaintiff's claims occurred within this Division and District.

5.      Plaintiff filed a timely charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") which issued her a Notice of Right to Sue on January 14,

2022.  A copy of the Notice of Right to Sue is attached as Exhibit A.

## FACTUAL ALLEGATIONS

6.      Plaintiff was hired on January 19, 2018, as a Human Resources Recruitment and

Development Manager.

7.      Plaintiff was hired by Patrick Taylor, the former Vice President of Operations.

8.      Mr. Taylor retired in July 2019.

9.      Mr. Taylor was replaced with Doug Leggins.

10.     As part of her job, Plaintiff helped other employees resolve their employment

complaints.

11.     A common complaint Plaintiff dealt with in the course of her employment was

that women were not treated fairly.

12.     Upon Mr. Leggins' promotion to Vice President of Operations in 2019, Plaintiff

received complaints of gender discrimination more frequently.

13.     Upon information and belief, company records show that women were given the

worst scores on their merit reviews across the board at the company.

14.     Upon information and belief, company records show that women were given the

smallest raises across the board at the company.

15.     This disparity in merit reviews and raises was due to Mr. Leggins' poor treatment

of and hostility towards women as compared to their male counterparts.

16.     Due to her position in HR, Plaintiff has knowledge of the following situations:

a.  Former employee Stacie Bennett felt compelled to resign her position due to Mr. Leggins' treatment of her.  Specifically, Ms. Bennett took intermittent FMLA leave due to her mother's passing in late November 2019.  Mr. Leggins grew irate with Ms. Bennett's leave and asked Plaintiff to find a loophole allowing him to fire her while she was on FMLA leave.  Plaintiff informed Mr. Leggins that this was illegal.  He responded that that was "very disappointing."

b.  Former employee Crystal Spiering was terminated by Mr. Leggins.  Mr. Leggins berated Ms. Spiering daily with the intention of causing her to have a mental breakdown.  Ms. Spiering complained to Plaintiff that the company was a "boy's club."  In April 2020, Ms. Spiering was hospitalized for chest pains and requested accommodations.  Mr. Leggins immediately began searching for a loophole with which he could terminate Ms. Spiering's employment before she took FMLA leave.  In an email, Mr. Leggins asked Robert Lamping, CFO, "Is there any way I can terminate her employment now before she gets FMLA set up?"  Mr. Lamping approved Mr. Leggins request to terminate Ms. Spiering's employment.  She was replaced by a male, Brady Walden.

17.  In addition, Mr. Leggins treated Plaintiff worse than her male colleagues.

18.  Mr. Leggins treated women as though they should only be in support roles, rather than leadership roles.

19.  Mr. Leggins' performance review for Plaintiff was markedly different from Mr. Taylor's reviews.

20.  When Plaintiff pointed out the discrepancy between the reviews, Mr. Leggins told Plaintiff that Mr. Taylor only reviewed her positively because he liked the way she looked.

21.     Plaintiff requested the ability to work from home due to the COVID-19 pandemic.

22.     Mr. Leggins denied Plaintiff's request, as well as female employee Sandra Buchard's work from home request.

23.     At the same time, Mr. Leggins approved male employees Jesse Campbell and Rick Coleman's requests to work from home.

24.     On August 13, 2020, Plaintiff filed a gender discrimination complaint against Mr. Leggins with Julie Osborne, Controller.  As Ms. Osborne previously held an HR role for the company, Plaintiff felt comfortable complaining to her.

25.     Ms. Osborne told Plaintiff that this was not the first time she had heard Mr. Leggins treated women unfairly.

26.     After listening to Plaintiff's complaint, Ms. Osborne informed her that John Kokenge, CEO, or Mr. Lamping would contact her for further investigation.

27.     Neither Mr. Kokenge nor Mr. Lamping contacted Plaintiff following her complaint.

28.     However, about a week after her complaint, Mr. Lamping visited the Bloomington location, where Plaintiff was employed.

29.     Mr. Lamping spent the majority of his time at the Bloomington location in Mr. Leggins' office.

30.     Mr. Lamping never spoke to Plaintiff about her complaint during his visit to the Bloomington location.

31.     Less than one week after visiting the Bloomington location and speaking with Mr. Leggins, Mr. Lamping returned to Bloomington on August 25, 2020.

32.     On August 25, 2020, thirteen days after Plaintiff's complaint, Mr. Lamping and Mr. Leggins terminated Plaintiff.

33.     Mr. Lamping and Mr. Leggins verbally represented to Plaintiff that the company was restructuring, and her position was being eliminated as a result.

34.     Upon notification of her termination, Plaintiff was immediately escorted from the premises with a warning not to speak to any other employees.

35.     Defendant posted Plaintiff's position, changing the title to HR Manager, immediately after her termination.

## COUNT I

### (Gender Discrimination – Title VII)

36.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

37.     Plaintiff is a female.

38.     Plaintiff was fully qualified for her position with Defendant at all relevant times.

39.     Defendant unlawfully discriminated against Plaintiff on the basis of her gender in violation of Title VII by treating her less favorably than male employees and by terminating her on the basis of her gender.

40.     Defendant engaged in a pattern and practice of gender discrimination.

41.     Defendant's actions were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights.

42.     As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to relief.

## COUNT II

### (Retaliation – Title VII)

43.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

44.     Plaintiff engaged in protected activity by filing a complaint against Mr. Leggins with Ms. Osborne.

45.     Only thirteen days after her complaint, Defendant terminated Plaintiff.

46.     Defendant has no legitimate business reason for terminating Plaintiff.

47.     Defendant engaged in a pattern and practice of retaliation.

48.     Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's rights.

49.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and is entitled to relief.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a)      That Defendant be enjoined from further unlawful conduct as described herein;

b)      That Plaintiff be awarded all lost pay and benefits;

c)      That Plaintiff be awarded compensatory damages, including for the emotional distress she suffered;

d)      That Plaintiff be awarded liquidated damages;

e)      That Plaintiff be awarded punitive damages;

f)      That Plaintiff be awarded front pay;

g)      That Plaintiff be awarded prejudgment and post judgment interest;

h)      That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than his compensation over several, separate tax years;

i)      That Plaintiff be awarded reasonable attorney's fees and costs; and

j)      That Plaintiff be awarded all other legal and equitable relief to which she may be

entitled.

Respectfully Submitted,

*/s/ Austin H. LiPuma*
Austin H. LiPuma (IN Bar No. 34339-89)
Katherine D. Neff Seeking *Pro Hac Vice*
Admission (OH Bar No. 0082245)
Trial Attorneys for Plaintiff
Freking, Myers, & Reul, LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
Phone:  (513) 721-1975
Fax:  (513) 651-2570
*alipuma@fmr.law*
*kneff@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Austin H. LiPuma*